FILED Oct 02 2018
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  s/ Josepht  DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>STANLEY PENN (2) and DAVID LEPPO (4),<br><br>Defendants. | CASE NO. 16cr1695-BEN<br><br><br>**ORDER ON MOTIONS** |

It is alleged in this case that between 2013 and 2016 the Defendants violated federal laws (18 U.S.C. §§1962(d); 1955; 1084(a)), while violating California law. Now before the Court are a number of miscellaneous motions. The Court rules as follows:

Docket No. 294. Spatafore's motion to sever is **denied** as moot because Judgment has been entered against him.

Docket No. 295. Spatafore's motion to suppress wiretap evidence is **denied** as moot because Judgment has been entered against him.

Docket No. 320. Penn's motion to join Defendant Spatafore's motions is **denied**.

1

16cr1695-BEN

Docket No. 331. Penn's motion to dismiss Count One for charging an unconstitutional offense, dismissing Count One for failing to properly allege a RICO conspiracy, and for a bill of particulars, is **denied**. Title 18 U.S.C. § 1962(d) is not unconstitutionally vague. Moreover, the indictment tracks the language of the statute properly alleging a RICO conspiracy. The motion for a bill of particulars is moot.

Docket No. 334. Penn's motion to compel disclosure of *Brady* material and material relevant to the preparation of the defense is **denied** for the same reasons as the motions at Docket Nos. 335, 336, and 339 are denied.

Docket No. 335. Penn's motion to compel discovery and set disclosure deadlines is **denied** as it asks the Government to identify to Penn that which may be favorable evidence for Penn. But, this is not the Government's obligation. The motion to continue the trial to January 2018 is denied as moot.

Docket No. 336. Penn's motion to compel discovery and for leave to file further motions is **denied**. Penn seeks a laundry list of discovery material after the Government has produced 50,000 pages and 20 gigabytes of discovery. Or, as Penn says elsewhere, the Government has produced enough paper that "the amount of paper in this case would stretch from the Earth to the Moon. *See* NASA, *Distance to the Moon, available at* http://1.usa.gov/1gjSNoL (approximately 250,000 miles)." See Dkt. No. 335. Further production is not shown to be warranted.

Docket No. 339. Penn's amended motion for disclosure of proffer information for cooperating witnesses who may be likely to testify is **denied**. The Government is not obligated to produce such information for tangential sources. *See United States v. Lucas*, 841 F.3d 796, 808-809 (9th Cir. 2016); *United States v. Decoud*, 456 F.3d 996, 1009 (9th Cir. 2006).

Docket No. 343. Leppo's motion to join five motions by defendant Penn is **denied** as moot.

Docket No. 345. Penn's second amended motion to sever was withdrawn and is **denied** as moot.

Docket No. 347. Penn's amended motion to dismiss the indictment for prejudicial delay was withdrawn and is **denied** as moot.

Docket No. 386. Segal's motion for disclosure of presentence reports is **denied** as moot because Judgment has been entered against him.

Docket No. 395. Segal's motion to suppress wiretap evidence is **denied** as moot because Judgment has been entered against him.

Docket No. 399. Leppo's motion to join the motion to suppress by defendant Segal is **denied**.

Docket No. 402. Penn's first motion to dismiss the indictment for outrageous Government conduct is **denied**. Penn faults FBI Agent Duke for reporting that during an interview of witness Biddle, Biddle described Penn as "scary" when Duke should have used the word "scared." This is based on an unofficial transcription of Biddle's own recording, wherein the Biddle was heard to say: "Stan - Stan's waayyy [sic] too scary to do something like that - way too scary! Way, way too scary!" Agent Duke then asked for clarification: "Scary or scared?" Mr. Biddle responded "Scarryyy. [sic]" Penn Mot. at 12. In spite of the actual words used by Biddle, Penn argues that Agent Duke made an unequivocally false statement and that it must have been willful and deliberate. Penn then argues that dismissal is the only remedy.

Agent Duke's interview report is not clearly false, as Penn contends. To the contrary, Biddle's description of Penn as "scary" is literally accurate even if one might (or might not) draw a different conclusion from the overarching context of the questions and answers. Consequently, the agent's conduct described by Penn is not outrageous and does not merit dismissal of the indictment.

Docket No. 405. Penn's motion to join motions of defendant Segal is **denied**.

Docket No. 406. Government's motion for leave to file an oversize brief is **denied** as moot.

Docket No. 416. Penn's supplemental memo to suppress wiretap evidence is **denied**. Title III of the Omnibus Crime Control and Safe Streets Act allows law

enforcement officers to use wiretapping in limited situations. *See* 18 U.S.C. §§ 2510–2522. A wiretap application must include a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." Tit. 18 U.S.C. §2518(1)(c); *see also United States v. Estrada*, No. 16-50439, 2018 WL 4440367 *4 (9th Cir. Sept. 18, 2018). "The necessity requirement exists in order to limit the use of wiretaps, which are highly intrusive." *United States v. Blackmon*, 273 F.3d 1204, 1207 (9th Cir. 2001) (quotation marks and citations omitted). If the application meets the requirements of § 2518(1)(c), then a court reviews for abuse of discretion the issuing judge's finding that the wiretap was necessary under §2518(3)(c) and her decision to grant the wiretap. *Id.*

Penn maintains that the initial wiretap application of March 16, 2015 contains neither a full and complete statement of facts nor a demonstration of necessity. As a penalty, Penn seeks that wiretap evidence be suppressed. Penn criticizes the wiretap application because the agent stated expressly in the application that he "set forth only facts necessary to establish the foundation for the requested Order." Penn then speculates that this means he has not set forth a full and complete statement. But the agent is not required to disclose all that he knows of the investigation. He does, however, need to set forth a complete picture of the need for a wiretap (*i.e.*, necessity). This, the agent (Max Regula) did.

An affidavit must include specific facts relevant to the particular circumstances of the case and not just boilerplate conclusions. *United States v. Blackmon*, 273 F.3d 1204, 1210 (9th Cir. 2001). Statements pertaining to a conspiracy in general can be used to show why an investigative technique would be too dangerous or unproductive in regard to all of the target subjects listed in a single wiretap application, so long as they are supported by facts specific to the case. Investigations of criminal conspiracies present unique law enforcement problems. *Canales Gomez*, 358 F.3d at 1226. Thus, the "government is entitled to more leeway in its investigative methods when it pursues a

conspiracy." *United States v. McGuire*, 307 F.3d 1192, 1198 (9th Cir. 2002). The necessity for the wiretap is evaluated in light of the government's need not merely to collect some evidence, but to develop an effective case against each of those involved in a conspiracy. *United States v. Decoud*, 456 F.3d 996, 1007 (9th Cir. 2006). Given that leeway, general statements about the conspiracy specific to the case are sufficient.

In the context of this case, the Government sought evidence to identify and prove relationships between certain persons and determine the extent of the each person's involvement with an illegal gambling enterprise. Importantly, the affidavits explain that this type of evidence is "rarely 'stored' in locations that can be searched or even kept in a tangible form capable of being physically seized."

Penn claims that Agent Regula made a substantial misrepresentation in the application. But a review of the application does not support Penn's claim. Penn says that on page 11 of the application, Agent Regula used the word "guys" instead of "guy" when retelling what suspect Tear said. Penn asserts, "[t]he use of the word 'guys' implies Tear is working with multiple people, and the only inference is those people are Segal, Penn, Burke, Huynh, and Nguyen. The quote of 'guys' was inaccurate, and the use of the term in plural was misleading." Actually, Agent Regula wrote "his guys" once. In all ten of the other locations, Agent Regula used the phrase "his guy." *See* Application at 11, 13 and 21. The Court is left with the conclusion that the term "guys" was a scrivener's error. In any event, it was not material. "A false statement or omission is a supporting affidavit will invalidate a warrant only if the omission is material." *Estrada*, 2018 WL 4440367 *4 (citing *United States v. Rivera*, 527 F.3d 891, 898 (9th Cir. 2008)).

Penn also asserts that the application should have included a fact that CS-1 was a close personal friend of Penn. But the application does say that there was a social relationship. It also says that CS-1 and Segal had a falling out and that Segal was wary of him. It says that Segal did not provide CS-1 much accurate information and probably fed CS-1 mostly disinformation. *See* Application at n.19. The friendship with Segal or Penn

was not useful in obtaining information about the conspiracy. Penn makes other claims as well but they are, like this one, unpersuasive.

The final issue is whether the application for the wiretap contained a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. Upon review it is evident that the affidavit includes information about confidential sources, undercover officers, physical surveillance, stationary surveillance, pen registers, toll analysis, grand jury subpoenas, trash searches, search warrants, interviews with associates, mail covers, and vehicle tracking devices.

The affidavit includes information on why particular techniques would not be effective in this particular investigation. The affidavit explains that the effectiveness of undercover agents, confidential sources, interviews, and grand jury subpoenas is limited due to the suspicious and careful nature of Defendant Segal and the difficulty in detecting illegal bookmaking activity when conducted alongside lawful gambling activity.

Penn maintains that the investigators were successful using confidential sources and secret recordings. However, mere attainment of some degree of success during law enforcement's use of traditional investigative methods does not alone serve to extinguish the need for a wiretap. *United States v. Bennett*, 219 F.3d 1117, 1122 (9th Cir. 2000). For example, the affidavit explains that the evidence that CS–1 could provide was limited because he no longer worked at the Lucky Lady and Defendant Segal was suspicious. He could not inquire about Segal's relationship to other subjects without raising more suspicion and putting the entire investigation at risk. The affidavit explains the insular nature of Defendant Segal's dealings with bettors. Although the undercover agents were able to make bets and record conversations, they were not made privy to the methods and extent of the sports betting operation.

Penn also asserts that, based upon the sweeping and broad regulatory authority vested in both the state and the local police department over the legal card room operation, Agent Regula "could have waltzed into the Lucky Lady, demanded all of its

business and financial records, its surveillance tapes, and interviewed any one of the hundred plus employees of the card room." Penn says that this plenary power not only vitiated the need for a wiretap, it vitiated the need for many "traditional" means of investigation such as subpoenas or video surveillance. But that is not the case. The suspected illegal bookmaking operation appears to be run by a few inside conspirators with access to the premises. The suspected conspirators dealt in cash and mixed it with cash from the legal betting business. They employed secret websites and accounts and used telephone communications, but not written records. Most of the employees of the card room were likely oblivious to the Defendant Segal's operation. Surveillance tapes might show people meeting and exchanging cash, but that occurred all of the time in the legal card room operation. Interviewing employees that were oblivious would have accomplished nothing but to warn the conspirators to go underground and change operations. With respect to stationary surveillance, the affidavit explains, *inter alia*, that pole cameras would not be productive because most illegal activity likely takes place on the premises of the Lucky Lady card room.

Agents did attempt trash searches but were discovered by housing security officers. Moreover, trash at the Lucky Lady is placed in a locked container and not open to searching. Law enforcement officers are not required to exhaust every conceivable alternative before obtaining a wiretap. *Christie*, 825 F.3d at 1068 (citing *Rivera*, 527 F.3d at 903). The affidavit need only explain why a particular investigative procedure reasonably appears "unlikely to succeed." 18 U.S.C. § 2518(1)(c).

Based on a de novo review of the affidavit, this Court concludes that there was an adequate explanation about why the interception of wire communications was necessary to investigate this conspiracy and the target subjects, and that there was a full and complete statement of facts to establish necessity under 18 U.S.C. § 2518(1)(c).

The second step of review asks whether the issuing judge appropriately determined that normal investigative procedures had been tried and failed or reasonably appeared to be unlikely to succeed if tried or to be too dangerous. 18 U.S.C. § 2518(3)(c). A

common sense approach is used to evaluate the reasonableness of the Government's good faith efforts to use traditional investigative tactics or its decision to forego such tactics based on the unlikelihood of their success. *Christie*, 825 F.3d at 1068.

The Court of Appeals and this Court accords the issuing judge "considerable discretion in finding necessity, particularly when the case involves the investigation of a conspiracy," *Reed*, 575 F.3d at 909, and the standard of review is deferential, *McGuire*, 307 F.3d at 1197. The affidavits here show that the Government used a range of traditional techniques including confidential sources, undercover agents, trash searches, pen registers, physical surveillance, and grand jury subpoenas before seeking authorization for electronic surveillance. The affidavit explains why other techniques such as search warrants, would be unproductive. In addition, the Court of Appeals has consistently upheld findings of necessity where traditional investigative techniques lead only to apprehension and prosecution of the main conspirators, but not to apprehension and prosecution of other satellite conspirators. *Rivera*, 527 F.3d at 902 (citing *McGuire*, 307 F.3d at 1198). After reviewing the factual statements in the affidavit, which include the purpose of the investigation and the information sought, it can be said that the issuing judge did not abuse her discretion in finding necessity in the circumstances presented here.

The wiretap order passes both tests. The order is not invalid and the motion to suppress is denied.

Docket No. 426. Penn's 2nd supplemental memo to suppress wiretap evidence is **denied**. Title III is constitutional and the Government has satisfied the Title III requirements.

Docket No. 433. Government's motion for leave to file a reply brief is **denied** as moot.

Docket No. 453. Leppo's motion to join is **denied**.

Docket No. 469. Penn's 3rd supplemental memo to suppress wiretap evidence is **denied**. Echoing his argument in his (first) supplemental motion, Penn says that the

wiretap application should have disclosed that CS-1 and Penn were "pals." Being pals, Penn says that CS-1 would have been able to discover all that the Government need to discover about the conspiracy. However, for the same reasons set out in the discussion of the first motion, the application demonstrated that CS-1 tried to use his personal social relationships with Penn and Segal but was unsuccessful in gaining this information. Thus, the necessity of wiretapping Segal's telephone was demonstrated.

Docket No. 475. Leppo's motion to quash three orders for disclosure under 18 U.S.C. § 2703 is **denied** due to lack of standing and lack of statutory remedy of suppression. *See* 18 U.S.C. § 2708.

Docket No. 483. Penn's 2nd motion to dismiss indictment for outrageous Government misconduct is **denied**. The Government's conduct was not persuasively shown to be outrageous and its conduct did not cause substantial prejudice (if any) to defendant Penn.

Docket No. 520. Leppo's motion to join is **denied**.

Docket No. 521. Penn's motion to join motions by defendants Spatafore and Segal is **denied**.

Docket No. 529. Government's motions in limine A through F:

A. Motion to preclude argument and evidence regarding allegations of government misconduct is **denied as moot**.

B. Motion to preclude argument and evidence regarding defendants' age or medical condition is **denied as moot**.

C. Motion to preclude argument and evidence regarding potential punishment and Defendants' business interests is **granted**.

D. Motion to preclude expert testimony for which disclosures have not been made as required by FRCrP 16(b)(1)(C) is **granted**.

E. Motion to compel reciprocal discovery/ preclude evidence not produced From admission during trial is **denied**.

F. Motion for leave to file further motions is **denied**.

Docket No. 573. Penn's motion to accept Mr. Penn's knowing, intelligent, and voluntary waiver of the prohibition under Federal Rule of Criminal Procedure 11(c)(1) of the Court's participation in plea discussions, and request that the Court assist the parties in resolving the case and provide the Court's guidance on the defense's proposed resolution is **denied**.

It is noted that there is a motion pending, to which Defendants have not yet responded. *See* Government's Motion for Reciprocal Discovery (filed August 10, 2018) (Dkt. No. 602).

**A status hearing regarding trial setting is set for October 22 at 2:00 p.m.**

///

///

Dated: 10/02/2018

Hon. Roger T. Benitez
United States District Judge