FILED

DEC 1 8 2018

CLERK U S DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 16cr1695-BEN |
|---|---|
| Plaintiff, | |
| vs. | **ORDER DENYING** |
| STANLEY PENN (2) and DAVID LEPPO (4), | **DEFENDANTS' MOTION TO DISMISS** |
| Defendants. | |

It is alleged in this case that between 2013 and 2016 the Defendants violated federal laws (18 U.S.C. §§1962(d); 1955; 1084(a)), while violating California law. Now before the Court is Defendant Leppo's motion to dismiss (filed Nov. 15, 2018) which is joined by Defendant Penn. The motion to dismiss is denied.

Defendants' argument is this: because Matthew G. Whitaker is currently the Acting Attorney General, and because the appointment of an Acting Attorney General must be in accord with the requirements of 28 U.S.C. § 508 and the Constitution because of the Attorney General's plenary authority over federal criminal litigation, dismissal of

this case is proper because Attorney General Whitaker's appointment is unlawful. This Court disagrees.

The legal questions regarding the interplay between Article 2 of the United States Constitution and 28 U.S.C. §508 raised by Defendants' motion are complex and far reaching. The Western District of Texas addressed these questions in *United States v. Valencia*, 2018 U.S. Dist. LEXIS 200564, 2018 WL 6182755 (W.D. Tex. Nov. 27, 2018). *Valencia* holds that 5 U.S.C. §3345 applies and the temporary appointment is valid. *Id.* at *10. Moreover, *Valencia* holds that even if the appointment of General Whitaker is invalid, §508 dictates that the Deputy Attorney General automatically is vested with the authority to act as Attorney General. *Id.* at *13. The *Valencia* decision is thoughtful and well-reasoned and is adopted in its entirety, here.

Defendants rest the entire weight of their motion to dismiss on the assertion that General Whitaker's appointment is invalid. But even if they were correct, it would not end the matter. There are other interests at play. First, and most basic, the Acting Attorney General has not made an appearance in this case and is not the prosecutor. The attorney(s) for the United States in this case are duly sworn prosecutors working under the supervision of the Acting United States Attorney for this district.

Second, the Indictment returned by the Grand Jury accusing Leppo and Penn issued long before the appointment of General Whitiker. There has been no argument made that a lapse in the Office of Attorney General immediately eviscerates or invalidates a previously issued indictment. "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956).

Third, the authority of a federal Grand Jury to investigate, accuse, and return a True Bill, does not flow from the Office of the Attorney General. In fact, it has been said that a federal Grand Jury acts *outside* of the three branches of government. Operating beyond the direction of the Justice Department, the Grand Jury has its own authority to

2

investigate and accuse as well as stand as a barrier between the government and a citizen. "The Fifth Amendment guarantees that no civilian may be brought to trial for an infamous crime 'unless on a presentment or indictment of a Grand Jury.' This constitutional guarantee presupposes an investigative body '*acting independently of either prosecuting attorney or judge*,' whose mission is to clear the innocent, no less than to bring to trial those who may be guilty." *United States v. Dionisio*, 410 U.S. 1, 16-17 (1973) (citations omitted) (emphasis added).

Fourth, the interest in bringing to trial one formally accused of a crime lies in the public as a whole; it is an interest that exists beyond that of the Department of Justice. And the interest of the public may be stronger than the interest of either the prosecutor or the defendant. To use an analogous example, while a defendant may waive his Sixth Amendment right to a speedy trial, the public has speedy trial interests that are separate from the interests of the defendant. Consequently, to protect the interests of the public, neither the defendant nor the prosecutor may waive the strictures of the Speedy Trial Act. "The [Speedy Trial] Act was designed not just to benefit defendants but also to serve the public interest by, among other things, reducing defendants' opportunity to commit crimes while on pretrial release and preventing extended pretrial delay from impairing the deterrent effect of punishment." *Zedner v. United States*, 547 U.S. 489, 501-02 (2006) (citing legislative history). "The [Speedy Trial] Act seeks to protect and promote speedy trial interests that go beyond the rights of the defendant; although the Sixth Amendment recognizes a societal interest in prompt dispositions, it primarily safeguards the defendant's speedy trial right -- which may or may not be in accord with society's." *Id.*

Finally, Defendants' argument is wrong that without a validly appointed Attorney General, there is no person to exercise the required supervision of the Department of Justice or the United States Attorneys. The President of the United States continues to hold all authority to execute the laws of the United States and prosecute those who violate the laws. It is the President's responsibility and obligation under Article 2, Section 3 of the United States Constitution which says, "he shall take care that the Laws

be faithfully executed." "The duties which are thus imposed upon him he is further enabled to perform by . . . executive departments. . . . These aid him in the performance of the great duties of his office, and represent him in a thousand acts to which it can hardly be supposed his personal attention is called, and thus he is enabled to fulfil the duty of, his great department, expressed in the phrase that 'he shall take care that the laws be faithfully executed.'" *In re Neagle*, 135 U.S. 1, 63-64 (1890). "But when a law is once passed for the government of the executive officer, all that appertains to its execution falls under the care of the president. It is his province to instruct and command the officer; to remove him if he acts unfaithfully; and to appoint one in his place who will fulfil his duty agreeably to law." *United States ex rel. Stokes v. Kendall*, 26 F. Cas. 702, 745-46 (D.C. Cir. 1837). "That, so far as regards the execution of the laws, therefore, no distinction can be maintained between the acts of the president and those of his subordinate officers. That in law they are all the acts of the president." *Id.* at 747. Put differently, the President retains the authority to prosecute a criminal case acting through his subordinates – including the Acting United States Attorney for the Southern District of California as well as the Assistant United States Attorneys assigned to the case, and their prosecutorial acts are, in terms of the law, acts of the President. Therefore, the continued prosecution of this case will be accomplished by those acting under one who has authority to supervise (*i.e.*, the President).

For these reasons, and with no authority to the contrary cited by Defendants, the motion to dismiss is denied.

It is noted that there is a motion pending, to which Defendants have not yet responded. *See* Government's Motion for Reciprocal Discovery (filed August 10, 2018) (Dkt. No. 602).

Dated: 12/17/2018

Hon. Roger T. Benitez
United States District Judge

4

16cr1695-BEN